**JEW YUT CHEW v. TILLINGHAST, Commissioner of Immigration.**

District Court, D. Massachusetts. April 23, 1928.

No. 3879.

Aliens ⊜32(8, 9)—Discrepancies in testimony of Chinese applicant's alleged father and brother held too insignificant to warrant exclusion; exclusion by reason of such discrepancies showing unfair hearing.

Discrepancies between present testimony of alleged father and brother of Chinese applicant for admission to United States as son of American citizen and their previous testimony in different proceedings concerning collateral issues *held* so insignificant as not to support finding that application was fraudulent and perjured, and to show that matter was not fairly heard.

Habeas Corpus. Petition by Jew Yut Chew against Anna C. M. Tillinghast, Commissioner of Immigration. Petitioner discharged.

Benjamin Dellheim, of Boston, Mass., for petitioner.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass., for defendant.

MORTON, District Judge. Habeas corpus to the Commissioner of Immigration. The applicant, Jew Yut Chew, is of the Chinese race; he claims admittance as the son of Jew Fook Lee. The alleged father is concededly a native-born citizen of this country. The only question is as to the alleged relationship.

The applicant, his alleged father, and an alleged older brother gave evidence before the immigration tribunals in support of the applicant's contention. Both the Board of Special Inquiry and the Board of Review agree that the testimony of these witnesses presented no significant discrepancies inter se, and on its face no grounds for rejecting it as perjured. The entire story was, however, disbelieved, and the applicant debarred, chiefly because of discrepancies between present testimony of the alleged father and older brother and their previous testimony in different proceedings, which discrepancies, it was held, so affected their credibility as to make them unworthy of belief in their statements concerning this applicant.

As to the father's testimony, the discrepancies relied upon relate principally to his first marriage and to his first wife. He mentioned her on this examination; he failed to do so on a previous one; but he had mentioned her explicitly on an examination in 1915. His explanation of his former omission is that the marriage took place many years ago, that she died three months afterwards without children, and that it is the custom of his people not to refer to the dead without necessity therefor. His reference to her in 1915, before the present applicant, the child of his second wife, was born, would seem to show conclusively that these discrepancies had no relation to the present proceedings. There is some confusion in respect to his own name. He registered here in the draft in 1918 under the name, it is said, of "Lew" instead of "Jew". There appears to be no doubt, however, that the present witness was the registrant, nor that he then mentioned a son corresponding in age, and

probably in name, making allowance for volunteer interpreters, with the present applicant. This being so, the change of name, assuming it to have been intentional, would not seem to affect the applicant's claim. In 1920 a passport was issued to the father under the present name, Jew Fook Lee, which strongly indicates that the uncertainty about the name, which is, perhaps, only the English spelling of it, has nothing to do with the issues here involved.

The alleged father returned to China twice at least after the birth of the applicant, viz. in 1920 and in 1923. The older brother, who came to this country with the father in 1915, also went back to China with him in 1920 and in 1923. Each of them, on their examinations for return certificates before each trip, mentioned the applicant as son and brother, respectively. The government records thus show that for nine years, in the case of the father, and for seven years, in the case of the brother, before the applicant arrived here, these witnesses have consistently referred to such a person.

The applicant's description of the village from which he comes is given with such wealth of detail as to leave no doubt that he is familiar with the place he is describing. While there are minor differences in the descriptions of the village, which are to be expected where different persons are describing a settlement of 30 or 40 houses at different periods, both the father and the brother also describe the place with so much particularity as to make it clear that they, too, have been there, and that it is the same place described by the applicant. All three witnesses tell who lived in houses spotted more or less at random, with comments about the occupants and the houses, and give many other details of the village. The circumstances quite exclude the possibility of an applicant, a boy of twelve, having been coached to such a story.

It might reasonably be found that the father had falsified about his first wife, and also perhaps—though it would be a severe judgment, in view of his 1920 passport—about his name in previous proceedings. His testimony on the present issue could perhaps be regarded with such distrust and suspicion as intentional falsification, though on an immaterial point, creates; "falsus in uno, suspicandus in omne." But the repeated references to this child over a long period of time, established by government records, do not depend on the present testimony of the father and brother. That there was such a child and such a village is too certain for fair

denial. The applicant is either that boy or somebody else who is being palmed off as he. There is nothing to support this latter alternative; the testimony in favor of the applicant is, as the immigration tribunals both agree, direct, consistent, and, unless rejected, conclusive. Those tribunals in their decisions elaborate the discrepancies, while they ignore the strength of the evidence in the applicant's favor. There has been in the government files since as early as 1925—it is said in the petitioner's brief since 1912—a photo of the applicant's mother, which had been taken from the alleged father by the immigration authorities at some time and retained by them. The applicant immediately recognized this picture. He failed to recognize a photograph of his older brother, whom, as a child of 10, he had last seen 2 years before. The Board of Special Inquiry thought his failure unaccountable if his story were true. The photograph is not submitted, nor is the date of it given. In the opinion of the board, the applicant appears 3 or 4 years older than the age given. But, when this was put to him, he insisted that his age was as stated, and he is corroborated by his alleged father and brother. No witnesses testified to the contrary, nor did the medical officer refer to the point.

The applicant's own testimony is unshaken and unimpeached; and the discrepancies in the testimony of the alleged father and brother do not relate to the present issue. It presses reason far and fairness farther to believe that a boy of this age, under the conditions which have surrounded him, could successfully carry through so great an imposture as has been attributed to him. And when it is considered that for 10 years the father has repeatedly mentioned this alleged son to government officers, and that the alleged brother has done so for more than 7 years, I am of opinion that the finding that the application for admittance was fraudulent and perjured was so baseless as to constitute at once proof that the matter was not fairly heard (Tisi v. Tod, 264 U. S. 131, 44 S. Ct. 260, 68 L. Ed. 590), and that the applicant is entitled to be discharged. This case is so similar to Go Lun v. Nagle, 22 F. (2d) 246 (C. C. A. 9th), and to Johnson v. Damon, 16 F.(2d) 65 (C. C. A. 1st), that an extended discussion of the law is unnecessary.

The medical certificate was not referred to by the Board of Review, nor was it relied on at the argument of this case. It was apparently brought in as a make-weight to bolster up the decision.

Let the prisoner be discharged.